IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| LAFFON GLYMPH,<br><br>                        Appellant,<br>      v.<br><br>OMR R.A. SERVICES LLC,<br>OVERLAKE HOSPITAL MEDICAL<br>CENTER,<br><br>                   Respondent. | No. 85539-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, C.J. — Laffon Glymph was admitted to Overlake Hospital for a tooth infection but after being discharged, she refused to leave the hospital and was eventually arrested. Glymph later initiated a lawsuit against Overlake alleging medical malpractice, medical negligence, and a lack of informed consent, because of the pain medication administered and her eventual arrest. Overlake moved for summary judgment, pointing to Glymph's lack of expert testimony. Following oral argument, the court granted Overlake's summary judgment motion.

On appeal, Glymph asserts that she provided facts sufficient to survive summary judgment and alleges that res ipsa loquitur negates the need for expert testimony. We disagree and affirm.

FACTS

In October 2018, paramedics took Laffon Glymph to the Overlake Hospital (Overlake) emergency department after she complained of shortness of breath

because of a tooth infection.  Once there, a physician administered lorazepam,[1] a pain medication and sedative.  The medication improved Glymph's condition and she was discharged.  Once discharged, however, Glymph refused to leave without a doctor's note permitting her to take a week off from work.  She was told that her treating doctor would order only one day off and would not write a note for a week.  After about three hours, Overlake called Bellevue Police, who arrested Glymph for trespass and removed her from the hospital.  Glymph told officers that she did not know why she was being arrested and asserted that she did not consent to receiving medication from hospital staff.

In October 2022, Glymph filed a lawsuit with the trial court against Overlake alleging medical malpractice, medical negligence, and a lack of informed consent.  She claimed that she suffered a schedule IV narcotic overdose and that she was falsely arrested and wrongfully trespassed from Overlake.  In response, Overlake moved for summary judgment, arguing that Glymph failed to provide competent expert testimony to support her claims.  Glymph then asserted res ipsa loquitur, contending that it negated her need for expert testimony.  Following oral argument, the trial court granted Overlake's motion for summary judgment.  The court noted that Glymph had not provided facts sufficient to survive summary judgment nor expert testimony to support her claims.  The court further noted that Glymph failed to provide any evidence of damages to support her claims.

Glymph appeals.

---

[1] Lorazepam is the generic name for Ativan.

2

ANALYSIS

Summary Judgment

We review a trial court's grant of summary judgment de novo, engaging in the same inquiry as the trial court. Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). We consider the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Keck, 184 Wn.2d at 370. Summary judgment is appropriate when no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). A genuine issue of material fact exists "if reasonable minds could differ on facts which control the outcome of the proceeding." Ghodsee v. City of Kent, 21 Wn. App. 2d 762, 768, 508 P.3d 193 (2022). A party opposing summary judgment cannot rely simply on allegations, denials, opinions, or conclusory statements, but instead must provide specific facts establishing a genuine issue for trial. Allen v. Asbestos Corp., Ltd., 138 Wn. App. 564, 570, 157 P.3d 406 (2007). We hold pro se litigants to the same standards as attorneys. Winter v. Dep't of Soc. & Health Servs., 12 Wn. App. 2d 815, 844, 460 P.3d 667 (2020).

Medical Negligence

Glymph alleges that Overlake committed medical negligence by administering lorazepam and in allowing her arrest on hospital property. But because Glymph fails to explain how the hospital's administration of medication violated the standard of care, we disagree.

To prevail on a claim of medical negligence based on a breach of the standard of care, a plaintiff must demonstrate that (1) "the health care provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he or she belongs, in the state of Washington, acting in the same or similar circumstances," and that (2) "such failure was a proximate cause of the injury complained of." RCW 7.70.040(1)(a), (2)(a)(ii). Importantly, the plaintiff must establish actual injury. RCW 7.70.040. Expert testimony is generally required to establish the standard of care and to prove causation. Behr v. Anderson, 18 Wn. App. 2d 341, 363, 491 P.3d 189 (2021).

Glymph contends that an Overlake doctor administered a schedule IV narcotic to her, resulting in an overdose and her eventual arrest. But Glymph does not provide any specific evidence supporting her assertion that she suffered a narcotic overdose and does not explain how the doses of lorazepam she received constitute an overdose. Without additional evidence or facts, this bare assertion is not sufficient to show that Overlake breached the standard of care.

As to her arrest, Glymph provides documentation that she was arrested but does not provide any evidence as to how her arrest demonstrates that Overlake breached its standard of care. Glymph provides no expert testimony or other evidence that the arrest was improper and she does not explain how any health care provider's alleged failure to exercise the requisite degree of care relates to her arrest. This is again insufficient to establish a genuine issue able to survive summary judgment.

4

Because Glymph failed to prove that Overlake breached its standard of care, the trial court did not err in dismissing Glymph's medical negligence claim.

Res Ipsa Loquitur

In response to Overlake's motion for summary judgment, Glymph argued that she is exempt from providing expert testimony because of the doctrine of res ipsa loquitur. We disagree.

Res ipsa loquitur "spares the plaintiff the requirement of proving specific acts of negligence in cases where a plaintiff asserts that [they] suffered injury, the cause of which cannot be fully explained, and the injury is of a type that would not ordinarily result if the defendant were not negligent." Pacheco v. Ames, 149 Wn.2d 431, 436, 69 P.3d 324 (2003). Res ipsa loquitur is applicable only when the evidence shows that (1) the incident producing the injury is of a kind which ordinarily does not happen without negligence, (2) the injuries are caused by an agency or instrumentality within the exclusive control of the defendant; and (3) the plaintiff did not contribute to the injury or accident-causing occurrence. Ripley v. Lanzer, 152 Wn. App. 296, 307, 215 P.3d 1020 (2009). The doctrine is disfavored and only sparingly applied by courts, in "exceptional cases[,] where the facts and demands of justice make its application essential." Jackass Mt. Ranch, Inc., v. S. Columbia Basin Irrig. Dist., 175 Wn. App. 374, 400, 305 P.3d 1108 (2013).

Although Glymph contends that she satisfied all three requirements of her res ipsa loquitur claim, she does not, in fact, offer any evidence to support her claim.

5

As to the first element, Glymph cannot establish that her alleged injuries are of a kind which ordinarily do not happen without negligence.  Glymph asserts two injuries: a narcotic overdose and her arrest.

She provides no evidence that she suffered a narcotic overdose.  Glymph appears to assert that her doctor administered too much lorazepam, causing the behavior that prompted her arrest and limiting her memory of the incident.  But she fails to establish that the amount of medication she was given caused an overdose or is sufficient to do so.  The side effects of an appropriately administered medication cannot be considered an injury which ordinarily does not happen without negligence.

Glymph also fails to provide evidence proving that her arrest was an injury resulting from negligence.  Glymph acknowledges that she does not remember the behavior that prompted her arrest.  The patient advocate nurse clarified that she was arrested for trespassing because, despite being discharged, she would not leave the hospital without a note indicating that she was to take a week off work.  But Glymph provides no evidence that the arrest was improper, much less that it was an injury resulting from medical negligence.

Because Glymph cannot meet the first res ipsa loquitur factor, her claim fails and the trial court did not err in dismissing it on summary judgment.[2]

_____

[2] In support of its assertion that Glymph fails to meet the third res ipsa loquitur factor, Overlake repeatedly refers to a lawsuit that Glymph brought against the City of Bellevue and the Bellevue Police Department.  That case is not at issue here.

Informed Consent

Lastly, Glymph asserts that the lorazepam was administered without her informed consent. Because she provides no evidence to support this claim, we conclude that the court did not err in dismissing Glymph's claim at summary judgment.

To succeed on an informed consent claim, a plaintiff must establish "(a) [t]hat the healthcare provider failed to inform the patient of material fact or facts relating to the treatment; (b) [t]hat the patient consented to the treatment without being aware of or fully informed of such material fact or facts; (c) [t]hat a reasonably prudent patient under similar circumstances would not have consented to the treatment if informed of such material fact or facts; [and] (d) [t]hat the treatment in question proximately caused injury to the patient." RCW 7.70.050.

Glymph does not address any of these factors. Rather, Glymph's opening brief states that "[t]his is a claim for Medical Malpractice, the cause of this claim is Schedule IV narcotic overdose, lack of informed consent," but this is the only detail she provides. Glymph did not identify an employee or agent who failed to obtain informed consent or state the information they failed to provide. And, once again, Glymph did not offer any expert testimony. Without that expert testimony on the issue, or truly any evidence regarding facts relating to treatment that she was not informed of, Overlake clearly establishes a lack of genuine issue of material fact. Glymph's informed consent claim cannot survive summary judgment.

7

We affirm.

_____
Smith, C.J.

WE CONCUR:

_____    _____
Coburn, J.                 Bruman, J.